## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR THE BENEFIT OF THE HOLDERS OF COMM 2014-CCRE14 MORTGAGE TRUST COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, SERIES COMM 2014-CCRE14 | |
| | Case No: 25 CV 5737 |
| Plaintiff, | |
| | Judge: Jeremy C. Daniel |
| v. | |
| | Property: |
| FLINT CREEK CROSSING CORPORATE VIEW LOT 2, LLC, | 760 West Main Street, Barrington, Illinois 60010 |
| | |
| | NON-RESIDENTIAL |
| Defendant. | |

## STIPULATION AND CONSENT ORDER APPOINTING RECEIVER

WHEREAS, the parties ("Parties") to the above-captioned action are: (1) U.S. Bank, National Association, as Trustee for the Benefit of the Registered Holders of Wells Fargo Commercial Mortgage Trust COMM 2014-CCRE14, Commercial Mortgage Pass-Through Certificates, Series COMM 2014-CCRE14 ("Plaintiff"); and (2) Flint Creek Crossing Corporate View Lot 2, LLC ("Borrower");

WHEREAS, on or about December 10, 2013, Borrower executed and delivered to Natixis Real Estate Capital LLC ("Original Lender"), that certain Promissory Note (as may have been amended, restated, modified, renewed or assigned, the "Note"), by and under which Borrower agreed to pay Original Lender the principal amount of Eight Million One-Hundred Thousand Dollars and No Cents ($8,100,000) (the "Loan"), including interest thereon and certain other amounts as provided therein;

1

WHEREAS, on or about December 10, 2013, Borrower executed and delivered to Original Lender that certain Loan Agreement (as may have been amended, restated, modified, renewed or assigned, the "Loan Agreement"), by and under which Borrower agreed to terms for the Loan;

WHEREAS, Borrower further executed that certain Mortgage, Assignment of Leases and Rents and Security Agreement, dated as of December 10, 2013 (as amended, restated, modified, or assigned, the "Mortgage" and, together with the Note, the Loan Agreement, and all other agreements and documents evidencing, securing, or otherwise relating to the Loan, the "Loan Documents") encumbering certain real property commonly known as 760 West Main Street, Barrington, Illinois, together with certain personal property owned by Borrower associated therewith (as more particularly described in **Exhibit A**, collectively, the "Property"), to secure Borrower's obligations under the Note;

WHEREAS, the Property is not occupied by Borrower or any of the other defendants as a principal residence;

WHEREAS, the Loan Documents and all rights and interest in the Loan were subsequently assigned to Plaintiff;

WHEREAS, an Event of Default has occurred under the terms of the Loan Documents, as a result of, among other things, Borrower's failure to pay the Loan in full by the Note's maturity date of January 5, 2024;

WHEREAS, subsequent to the Event of Default, Plaintiff and Borrower executed that certain forbearance agreement entered into as of December 23, 2024 (the "Forbearance Agreement") with respect to the Event of Default under the Loan Documents;

317525486v.4

WHEREAS, an Event of Default has occurred under the Loan Documents as modified by the Forbearance Agreement and/or under the Forbearance Agreement a Forbearance Termination Event has occurred;

WHEREAS, pursuant to Section 10(a) of the Forbearance Agreement, upon the occurrence and during the continuance of a Termination Event, Plaintiff has the right to seek the appointment of a receiver to take immediate possession and control of the Property and Borrower has acknowledged and agreed to such appointment and Borrower further irrevocably consented to the entry of this order and to fully cooperate with Plaintiff to effect the immediate appointment of a Receiver;

WHEREAS, the Illinois Mortgage Foreclosure Law provides that "if (i) the mortgagee is so authorized by the terms of the mortgage or other written instrument, and (ii) the court is satisfied that there is a reasonable probability that the mortgagee will prevail on a final hearing of the cause, the mortgagee shall upon request be placed in possession of the real estate, except that if the mortgagor shall object and show good cause, the court shall allow the mortgagor to remain in possession." 735 § 5/15/1701(b)(2);

WHEREAS, Parties have agreed to the appointment of a receiver pursuant to 735 ILCS 5/15-1701(b)(2), 5/15-1702(a) & (b), and 5/15-1706(a) in the above-captioned case; and

NOW, THEREFORE, subject to the approval of the Court, Parties hereby stipulate and agree as follows:

1. <u>MOTION IS GRANTED.</u> Plaintiff has established on an interlocutory basis that, pursuant to the terms of the Mortgage and Forbearance Agreement and 735 ILCS 5/15-1701(b)(2), 5/15-1702(a) & (b), and 5/15-1706(a), Plaintiff is entitled, based upon its request, to have a receiver appointed to control, possess, maintain, and operate the Property during the pendency of

3

this proceeding until such receiver is discharged or relieved by order of the Court, without prejudice to any defenses Borrower may present. Borrower does not oppose: (i) the appointment of a receiver to take immediate possession and control over the Property, subject to the terms and conditions contained in this Order; or (ii) the entry of this Order.

2. APPOINTMENT OF RECEIVER AND CREATION OF THE RECEIVERSHIP. **Matthew Tarshis of Frontline Real Estate Partners** (in its capacity as such, "Receiver") is qualified to act as the receiver of the Property in this action and is hereby appointed to take possession of, manage and operate the Property as Receiver, and to do any other acts they deem proper to protect and maintain the Property as provided under 735 ILCS 5/15-1704 until the conclusion of this action (which receivership proceeding shall be referred to as the "Receivership").

3. POSSESSION BY RECEIVER. Receiver shall take and have exclusive possession of the Property unless removed by further order of this Court upon the motion of any party to this Order.

4. DUTIES OF RECEIVER.  Receiver shall have all the powers, duties, and authority as provided by law or under this Order, and shall operate, manage, control, conduct, care for, preserve, and maintain the Property.

5. POWERS OF RECEIVER. Receiver is authorized and empowered to act as the receiver of the Property and to do any and all things necessary for the proper management, operation, preservation, maintenance, protection, administration, leasing, marketing, and/or sale of the Property, and shall have and possess all powers and rights to the extent necessary to facilitate the management, operation, preservation, maintenance, protection, administration, leasing, marketing, and/or sale or other disposition of the Property, including, but not limited to, the following:

4

(a) <u>Management</u>. Take immediate possession of the Property to manage, control, lease, operate, preserve, protect, market for sale, and/or sell the Property, and to take any other acts as Receiver deems proper to protect and maintain the Property, including, without limitation, hiring Frontline Real Estate Partners as the management company to manage the Property on a day to day basis and a leasing company to manage leasing of the Property during the pendency of this action until such time as this Order terminates or until further order of this Court;

(b) <u>Collection Actions</u>. Instruct those who owe an obligation (*e.g.,* rents, income, accounts receivable (from any time period), and any other amounts due and unpaid) with respect to the Property or that hold funds related to the Property (*e.g.* financial institutions), including, without limitation, any tenant or prospective tenant of any portion of the Property, that such amounts shall be delivered directly to Receiver or their designated agents, in such manner and at such address as Receiver deems appropriate and, if unpaid, institute and prosecute all proper actions, including issuing demands for the freezing and turnover of funds upon any financial institution or utility company which Receiver has determined is a depository of funds belonging to, or arising from, the Property, whether such accounts be titled in the name of Borrower or not, for the collection of all cash and accounts and employ counsel or other professionals to represent Receiver in the prosecution of said actions. All such depositories, and any other persons in active concert or participation with Borrower, are authorized and directed to: (i) take such steps as are necessary to restrain or prevent Borrower from withdrawing, disbursing, distributing, or causing the diversion of any funds, cash, income, or deposits in any accounts related to the Property and (ii) immediately turn over all funds in any Property accounts to Receiver; (iii) provide to Receiver a complete listing of account numbers under the name of Borrower, including accounts previously closed; and (iv) provide each such account's current balance and, upon request by Receiver, to

317525486v.4

monthly bank statements (and details of any such transactions as requested) for a period of up to one (1) year prior to entry of this Order. Until further notice of the Court, any person or entity liable therefore is hereby directed to deliver exclusively to Receiver all payments to Borrower for rents, income, accounts receivable, deposits of any kind (including security and utility), tax appeals refunds, insurance claim proceeds, or other amounts due or hereafter to become due and are hereby enjoined from doing otherwise. Receiver shall establish a bank account in the name of Borrower utilizing Borrower's taxpayer identification number to deposit such receipts and shall utilize such funds for payments of fees and expenses of the Receivership, it being understood that no such income or expenses shall be assessed to Receiver individually and instead, to Borrower, utilizing Borrower's federal taxpayer identification number. Upon request from Receiver, Borrower shall assign or direct accounts, rent payments, and rent proceeds to accounts designated by Receiver and endorse checks related to the Property;

(c)     Waste; Repairs. Receiver shall reasonably maintain the Property, prevent waste, and make all necessary repairs of an ordinary nature to maintain the Property in good order;

(d)     Negotiation. Receiver may negotiate with any and all interested persons concerning use of the Property and enter into leases, lease amendments, and/or other tenancy/occupancy agreements in the ordinary course of business without further approval of the Court or Parties. Receiver shall obtain Court approval prior to entering into leases, tenancy agreements, or other similar agreements occurring outside of the ordinary course of business;

(e)     Litigation Generally. Receiver may, in consultation with Plaintiff, institute and prosecute suits or summary proceedings: (i) for the collections of rents, income, or other amounts; or (ii) otherwise related to the Property or the other duties imposed upon Receiver by this Order, including, without limitation, to evict tenants in breach of their lease agreements in

6

accordance with the terms of such lease agreements and applicable law. Receiver shall have sole and exclusive authority to institute or prosecute the aforementioned suits or summary proceedings, which authority may only be delegated upon the express written consent of Receiver and Plaintiff. Receiver may defend against any legal action brought against them in their capacity as Receiver against or pertaining to the Property and shall have exclusive authority to defend any legal action brought against Borrower pertaining to the Property. To the extent a claim can be defended pursuant to an applicable insurance policy, Receiver shall utilize the same for such defense. All costs and expenses arising from or in connection with such legal actions or suits shall be operating expenses of the Receivership estate;

(f)     <u>Payment of Expenses</u>. Pay and discharge all such reasonable, out-of-pocket costs and expenses as shall be incurred by Receiver in the ordinary course of business in connection with the operation, maintenance, management, leasing, protection, and preservation of the Property, and reasonable expenses required to position the Property into a saleable, market-ready condition or otherwise necessary to realize the value thereof, not to exceed $20,000 without prior Court approval. Except as set forth in this Order, Receiver shall have sole and absolute discretion regarding the payment of all pre-Receivership, existing, or future claims against the Property. To the extent that funds available from the income collected from the Property are insufficient to allow Receiver to manage, operate, lease, protect, and maintain the Property in accordance with their duties hereunder, Plaintiff, in its sole discretion and upon notice to Borrower may make additional advances (the "<u>Protective Advances</u>") under the Loan Documents upon Receiver's request. The Protective Advances shall be added to the Debt and shall accrue interest in accordance with the terms of the Loan Documents. Neither Receiver nor their property manager or agents are obligated to fund any expenses of the Property with their own funds;

(g)     Payments to Plaintiff. Receiver is authorized and directed to pay any excess receipts (*i.e.* gross income less the payment of operational expenses and establishment of an operating reserve in the amount of three (3) months of operating expenses and annual escrows for taxes, insurance, fire-building code/life safety violations and deferred maintenance) to Plaintiff, which funds Plaintiff shall apply to the Debt, in such order and manner as Plaintiff shall elect in its sole discretion;

(h)     Contracts. Assume and fulfill obligations under all existing contracts (to the extent Receiver does not unreasonably terminate such contracts as not necessary for the continued benefit and maintenance of the Property; *provided*, *however* that any termination, rejection, or default fees/penalties resulting from such termination shall be an operational expense to be paid strictly out of the operation of the Property to the extent such funds are available) with Borrower or any property manager relating to the Property and such contracts shall continue in effect during the pendency of the Receivership, and Receiver is authorized to enter into contracts affecting any part or all of the Property as required in the ordinary course of operating the business related to the Property. If there is sufficient income from the Property, Receiver shall pay out of such income collected to any and all outstanding obligations to suppliers or other creditors who have previously supplied services, materials, business supplies, and/or labor to or for the benefit of the Property other than pre-Receivership expenses, which Receiver shall evaluate if payments are necessary in their sole judgment and to the extent that Receiver determines that any pre-Receivership expenses should not be paid, those pre-Receivership expenses shall remain an operational expense to be paid strictly out of the operation of the Property, as available. Receiver shall not unreasonably withhold such payments and will act at all times in good faith in determining what pre-Receivership expenses, if any, should not be paid;

8

(i)      Utilities. Open new customer accounts with each utility that provides services to the Property or require Borrower to name Receiver as an authorized user of any of the existing utility accounts for the Property. Further, Borrower shall cooperate with Receiver to request that all utility companies and other providers of utility services (including without limitation, electricity, gas, water, sewage, garbage, television/cable, and telephone) ("Utility Provider") not discontinue any services being provided to the Property. Each Utility Provider is authorized to forthwith transfer any deposits that it holds in connection with the Property to the exclusive control of Receiver and is prohibited from discontinuing service to the Property based upon unpaid bills incurred by Borrower;

(j)      Agents. Employ general and special counsel, accountants, property managers, leasing agents, accountants, counsel, maintenance workers, technical experts, consultants, agents, employees, investigators, engineers, construction vendors, security guards, insurance agents, tax appeals consultants, and any other persons reasonably deemed by Receiver to be necessary or advisable to assist Receiver in performing their duties hereunder and pay therefor the ordinary and usual rates and prices, including but not limited to such agents or brokers deemed necessary to pursue a sale of the Property;

(k)      Licenses and Permits; Trade Names. Apply for and obtain any necessary licenses, permits, or approvals of all applicable regulatory bodies and use any existing trade name of the Property and licenses, permits, or approvals of Borrower or its property manager. Receiver is further authorized to use any existing trade name of the Property owned by Borrower or its property manager and Borrower represents and warrants that Borrower or its property manager own any existing trade names and that no other party's consent is required to allow Receiver to use such trade name during the Receivership. If utilization of the same requires any payment of

9

any reasonable fees to an applicable governing authority for any lawful license, permit, or other governmental approval relating to the Property, including to and confirm the existence and, to the extent permitted by law, exercise the privileges of any existing license, permit, and other governmental approval, then Receiver is authorized to pay the same;

(l)     Listing, Marketing, and Sale. Except as otherwise provided herein, lease, market for sale, and/or sell the Property. However, Receiver shall not enter into any listing or marketing agreements for the sale of the Property, terminate any existing listing or marketing agreements for the sale of the Property, enter into any sales contracts, or terminate any sales contracts without prior written approval by Plaintiff and the Court. Borrower shall cooperate in all reasonable ways with Receiver, including executing any documents or instruments in conjunction with a sale of all or any portion of the Property that may be approved in accordance with this Order. Borrower hereby waives any and all objections to Receiver's authority to list, market and sell the Property. Receiver shall provide such reasonable information as Plaintiff requests with respect to any sale process; and

(m)     General Authority and Limitation of Liability. Do all things and incur the risks and obligations ordinarily incurred by owners, managers, and operators of property similar to the Property.

6. TURNOVER. Borrower, and its officers, directors, stockholders, general partners, limited partners, members, managers, affiliates, agents, and employees, and all other persons with actual or constructive knowledge of this Order, shall fully cooperate with Receiver and turn over to them within seven (7) days after the date of this Order, to the extent they actually possess or control, without being subject to privilege:

317525486v.4

(a) all property owned by Borrower (including an inventory of all personal property as well as deeds to automobiles, subject to any other security interest) related to the Property, including, without limitation: (i) cash on hand; (ii) all cash equivalents, accounts receivable from any time period, and negotiable instruments (*e.g.*, checks, notes, drafts, or other related documents or instruments including guarantees and warranties of any kind); and (iii) all sums held in accounts at any financial institutions, including, without limitation (A) tenant/lessee security deposits and utility deposits, (B) deposits held in escrow for any purposes, such as the payment of property taxes on the Property (including all tax appeal refunds) and insurance premiums, (C) proceeds of insurance related or pertaining to the Property, including claims and refunds, (D) rent and prepaid rent, (E) funds designated or intended for capital improvements on, repairs on, or renovations to or in connection with the Property, and (F) all other sums of any kind derived from the use, enjoyment, possession, improvement, or occupancy of all or any portion of the Property. Furthermore, as of the date of this Order, Borrower and any operator of the Property (other than Receiver and their agents), their agents, and employees shall not use any sums then in existence, or which later come into its possession or control, derived from the Property or as otherwise described in Paragraph 6 of this Order, without proper written consent of Receiver and Plaintiff;

(b) all books and records related to the Property, including, without limitation: (i) the hard copies and electronic copies of records, books of account, ledgers, and all other business records, wherever located and in whatever mode maintained that relate to the Property or Receiver's duties and powers created herein, including, but not limited to, information contained on computers and any and all software, e-mail accounts, usernames or IDs, passwords or other security information, training manuals relating thereto, all banking records, statements and

canceled checks, (historical) detailed operating statements from any period, budgets, personnel records, real estate tax bills, plans, surveys, and architectural drawings; (ii) originals of any leases, tenancy agreements, or any other agreements to which the Property is or may be subject; (iii) a current rent roll and historical rent rolls and abstracts with full and complete information including but not limited to unit number, tenant name/contact information, lease start-end dates, square footage, base rent and all additional rent, security deposits, options of any kind, escalations, guarantors, credit reports/background checks, and comments; (iv) any amounts paid by tenants; (v) all liens or other encumbrances on the Property; (vi) property taxes and property tax appeals; (vii) insurance of all types, including property (*e.g.* replacement cost, special, boiler & machinery, business interruption, law and ordinance, and TRIA) and liability (*e.g.* G/L, auto, excess, and workmen's comp/employers liability/EPLI, except that Receiver shall not make any claim under Borrower's EPLI for claims that arise from or relate to conduct on the part of Receiver or any principal or agent of Receiver), related to the Property; (viii) all accounts payable and receivable pertaining to the Property from all time periods going back to the commencement of the Loan, including utility accounts; (ix) all accounts at financial institutions for income derived from lessees or insurers of, or otherwise related to, the Property; (x) all documents relating to the development, management, and operation of the Property including, without limitation, contracts, agreements, proposals, purchase orders, correspondence, management agreements, brokerage agreements, pending litigation files, and insurance claims; (xi) all records required to be kept under applicable safety and environmental laws, documentation of any code violations of any kind, and notices specific to the Property relating to COVID-19; (xii) all documents that relate to any current or former employee or other person or entity who performed services at the Property; (xv) all telephone, facsimile, post office box numbers, and addresses for or used exclusively in or related

12

to the operation of the Property; (xvi) all tenant and vendor insurance certificates and loss runs and claims submitted in the past five (5) years; (xvii) an aged listing of all trade payables and other payables; (xviii) annual balance sheet and profit and loss statements, operating statements and budgets for all time periods going back to the commencement of the Loan; (xix) an aged listing of all trade payables and other payables; (xx) plans, specifications, surveys, and drawings of the Property, including but not limited to building and individual floor plans, elevator and/or escalator plans, and mechanical system plans and technical manuals for the systems, machinery, and equipment; (xxi) any and all maintenance logs and repair records for all systems in place at the Property; and (xxii) any and all current marketing materials and information, including, but not limited to, any prospect reports, website domain information, and access to social media;

(c)    all documents that constitute or pertain to any license, permit, or governmental approval constituting part of or relating to the Property;

(d)    all material agreements of any kind whatsoever, in effect as of the entry of this Order, which relate or related to any interest in or the operation of the Property;

(e)    all material documents which constitute or pertain to insurance policies and all notices and correspondence relating thereto, whether currently in effect or lapsed, which relate to the Property;

(f)    all other aspects of the Property that are or may be reasonably necessary or pertinent to Receiver's operation or management of the Property or the performance of any power or duty granted by this Order, including, without limitation: (i) delivering all keys (master, copies, and key fobs/cards) and security and/or alarm codes necessary for access to the Property and passwords, user IDs, accounting software, marketing materials, surveys, environmental reports,

property conditions assessments, zoning information, photographs (including aerials), floorplans, site plans, demographic information, appraisals, and flood plain information (if any); and

(g)     Plaintiff and Receiver acknowledge and agree that Borrower is not waiving and shall not be deemed to waive any privilege which may be applicable to any documents or information, even if any such material is turned over to Receiver, and that Borrower shall not be obligated or required to turnover any property that is not owned by Borrower.

7. <u>NON-INTERFERENCE WITH RECEIVER</u>. Until such time as the Receivership is terminated by further order of this Court or in accordance with the terms of this Order, or except as required by the order of a court of competent jurisdiction or in response to a validly issued subpoena, Borrower, and its officers, directors, stockholders, general partners, limited partners, members, managers, affiliates, vendors, agents, and employees, creditors, and any other person with actual or constructive knowledge of this Order, shall not:

(a)     <u>Interfere</u>. Directly or indirectly interfere in any manner with the discharge of Receiver's duties hereunder or Receiver's possession of and operation or management of the Property;

(b)     <u>Authority to Bind</u>. Enter into any contract binding upon, incur any liability or obligation of, or encumber any of the Property;

(c)     <u>Dispose of Receivership Estate</u>. Except both: (i) in the ordinary course of the operation of Property; and (ii) upon the express written delegation by Receiver, expend, disburse, transfer, assign, sell, convey, devise, pledge, mortgage, create a security interest in, encumber, conceal, or in any manner whatsoever deal in or dispose of the whole or any part of the Property;

14

(d)   Commit or Suffer Waste. Do any act that will, or will tend to, impair, defeat, divert, prevent, or prejudice the preservation of the Property; or

(e)   Litigation. Commence, continue, or join in any action, suit, proceeding or arbitration, of any kind or nature, at law, in equity or mixed, or seek to enforce, execute on, or exercise rights or remedies with respect to any lien, judgment, right of first refusal, or similar rights, or discovery in or under the guise of any court other than this Court.

8. COURT APPROVAL OF SALE. Any sale of the Property shall be approved by the Court.

9. FURTHER INSTRUCTIONS. Receiver or any Parties may at any time apply to this Court for further or other instructions and for further powers necessary to enable Receiver to perform their duties properly.

10. TAXES. Neither Receiver nor their agents shall have any responsibility for filing tax returns of any kind on behalf of Borrower nor any responsibility for paying taxes (other than real property taxes) assessed on Borrower for any and all years prior to and during the Receivership or thereafter, all of which shall be the responsibility of Borrower. Receiver or their agents shall provide financial information in a reasonable time frame when requested by Borrower or its CPAs in writing for purposes of filing income tax returns of any kind.

11. LIMITATION OF LIABILITY AND INDEMNIFICATION.

(a)   Neither Plaintiff nor Receiver shall be liable for any obligation of Borrower relating to the Property that arose prior to the entry of this Order, including, without limitation, any contingent or unliquidated obligations, nor shall Plaintiff or Receiver be obligated to advance any of their own funds to pay any expense or other liability of the Property. Notwithstanding the foregoing, should Plaintiff decide, in its sole discretion and upon notice to Borrower, to advance

funds to maintain or preserve the Property, the repayment of all such funds advanced shall be secured by the Mortgage and shall be added to the Debt and any judgment entered in this or any related action. Neither Plaintiff nor Receiver shall be liable to any person or entity for any claims, actions, or causes of action arising out of or relating to the events or circumstances occurring prior to the entry of this Order, including, without limitation, whether contingent or unliquidated or claims arising from the performance of services by a third party for or on behalf of Borrower or claims to which Borrower is currently or ultimately exposed under applicable laws pertaining to the ownership, use, or operation of the Property. Neither Receiver nor Plaintiff shall be responsible for payment of any expenses (including, without limitation, for services, build-outs, or any other construction), utility bills (including without limitation, electricity, gas, water, sewage, garbage, television/cable and telephone) and unpaid payroll expenses incurred by, or for the benefit of, the Property prior to Receiver's taking possession of the Property.

(b)     Receiver shall not be liable for acts or omissions hereunder in good faith, except for their own gross negligence or intentional or willful misconduct and (except with respect to claims based upon gross negligence, intentional or willful misconduct, or material bad faith that are successfully asserted against Receiver) Parties shall jointly indemnify and hold harmless Receiver and their agents from and against any and all losses, liabilities, claims, actions, damages, and expenses, including reasonable attorneys' fees and disbursements, arising out of or in connection with this Order and Receiver's actions, obligations, and duties thereunder. Borrower, and any party claiming through Borrower, hereby releases Receiver from any act done or omitted to be done by Receiver in good faith in the performance of their duties under this Order, unless such act or omission constituted gross negligence or intentional or willful misconduct by Receiver. Parties acknowledge and agree that all obligations and liabilities of Borrower arising from or

16

relating to this Order shall be subject to the limitations set forth in Section 10.1 of the Loan Agreement and Section 27 of the Mortgage (which are incorporated as if fully set forth herein) in the same manner and to the same extent as the obligations and liabilities of Borrower under the Loan Documents. No party shall file a complaint against Receiver or their agents without prior approval of the Court.

12. INSURANCE. Borrower shall not cancel any existing insurance policies and shall add Receiver, their property manager, and their designees as additional insureds on any insurance policies covering the Property. If Borrower does not provide evidence to Receiver that Receiver has been added to its existing insurance as required in this Paragraph 12 within five (5) days of the date of the entry of this Order, or if Borrower at any time allows its existing insurance coverage to lapse in effectiveness or amount of coverage, Receiver may, without further act of or notice to this Court, immediately cancel existing insurance and/or obtain insurance for the Property in connection with Receiver's duties hereunder in such amount, with such companies, and to insure against such risks as Receiver deems necessary and any refunds of pre-paid insurance premiums shall be delivered directly to Receiver, and, in such case, after written instruction from Receiver Borrower thereafter may cancel any previously existing and redundant insurance policies and any refunds of pre-paid insurance premiums with respect thereto shall be delivered directly to Receiver; *provided, however*, that any party in interest, including Parties, may petition the Court to review and order Receiver to modify such insurance coverage. The premiums for such insurance coverage may be financed. Receiver may, in their discretion, elect to renew any existing insurance policies of Borrower, and Borrower shall cooperate with Receiver if they elect to renew any of the same at or before expiration of the same (the cost of the premiums for such renewals to be paid by the Receivership estate). Receiver may, in their discretion, obtain receivership and/or errors &

omissions liability insurance covering the acts and omissions and any related claims against Receiver arising from the Receivership and the cost shall be deemed a normal, ordinary, and necessary operating expense of the Property. All insurance obtained by Receiver shall name as additional insureds Parties and such other commercially reasonable designees as Receiver may determine. The cost of insurance maintained by Borrower covering the Property and any deductible in connection with any claim made during the Receivership under applicable insurance shall be an operational expense of the Property and shall be timely and promptly paid (or reimbursed to Borrower) by Receiver.

13. REPORTING AND ACCESS.

(a)　　Receiver is directed to prepare and file with the Court for the Court's approval, on or before September 17, 2025, an initial full and complete report under oath covering the period from May 29, 2025 through August 31, 2025, setting forth all receipts and disbursements and reporting all acts and transactions regarding the execution of the trust of their office as such Receiver, including a current inventory of the funds, assets, and property remaining in their possession, all interest in and claims against the same, a current rent roll and current and anticipated income therefrom, and all debts and obligations contracted and expenditures made by it and the reasons therefore, and stating and explaining all changes in the assets and the charges that have occurred during the period covered by the account. Receiver is further directed to serve copies thereof on Borrower or its attorneys of record, as well as on Plaintiff. Objection to such report shall be filed on or before September 24, 2025.  The Court will hold a hearing to approve Receiver's initial report on or before _____ _____, 2025 at _:_ a.m.  Thereafter, no less frequently than fifteen (15) business days after every ninety (90) days (or the completion of three full calendar months) following August 31, 2025, so long as any part of the Property remains in

317525486v.4

Receiver's possession, and on or within seventy-five (75) days after termination of the Receivership, Receiver shall submit a periodic report with substantially the same information as set forth in this Paragraph 13(a). The Court shall set the objection deadline and hearing date for each periodic report upon the hearing to approve the prior report.

(b)      Notwithstanding the foregoing, Receiver shall take all necessary steps to accommodate any additional reasonable request for updated Rent Rolls and any other reasonable request for information made by Plaintiff or Borrower.

(c)      Receiver is directed to provide access to the Property to Borrower's broker, prospective purchasers, and/or tenants no less than two (2) weekdays per week for review, assessment, and showing of the Property, upon seventy-two (72) hours prior written notice provided to Receiver.

14. <u>COMPENSATION OF RECEIVER</u>. Receiver and any manager or management company employed or retained by Receiver shall be compensated, subject to the Court's approval, in accordance with the Fee Schedule attached hereto as **<u>Exhibit B</u>**, which is incorporated herein. The Court may reduce Receiver's fees as it deems appropriate on any reasonable basis. Receiver also shall be reimbursed for reasonable and necessary out of pocket costs advanced by Receiver to the extent such costs directly relate to Receiver's duties hereunder; *provided, however*, that Receiver must obtain written approval from Plaintiff prior to incurring any single cost or expense in excess of $5,000, unless such cost or expense is deemed by Receiver to be an emergency, in which case Receiver shall promptly provide Plaintiff notice and full explanation of such emergency cost or expense. Such fees and expenses shall be payable monthly without the requirement of a further order of this Court. Receiver's fees, and any advances Receiver may have

19

make in its discretion during the pendency of the Receivership, shall be added to the total Indebtedness owed to Plaintiff.

15. <u>TERM</u>. Receiver shall immediately assume their duties upon entry of this Order, and shall have ten (10) days from the date of this Order to post the bond required in this Order (if any). Receiver's rights and duties with respect to the Property and as Receiver granted pursuant to this Order shall cease and terminate, in the absence of a further order of the Court, upon the earlier to occur of: (i) the transfer of record title to the property by virtue of an execution or foreclosure sale held pursuant to any judgment obtained by Plaintiff in connection with the Complaint filed in the action; (ii) any other transfer of record title of the Property, whether by deed in lieu of foreclosure or otherwise; (iii) agreement of Plaintiff and Borrower; or (iv) Borrower's refinance of the Property and the satisfaction in full of the Debt. Receiver shall take possession of the Property immediately upon entry of this Order.

16. <u>BOND</u>.  Borrower consents to Plaintiff's request to waive the statutory bond required by 735 ILCS §5/2-415.

17. <u>JURISDICTION</u>. The Court shall retain primary and exclusive jurisdiction to the extent necessary to interpret, construe, and enforce this Order and any further decrees (including amendments or modifications) and to resolve any disputes concerning this Order brought to the Court's attention by Receiver.

317525486v.4

18. <u>DISCHARGE OF RECEIVER</u>. Upon final order of this Court discharging Receiver from their duties hereunder, Receiver shall disburse any funds remaining in the Receivership estate to Plaintiff or as otherwise instructed by this Court.

IT IS SO ORDERED.

Dated: June 2, 2025

_____
JEREMY C. DANIEL
United States District Judge

Agreed and Stipulated to this 21st day of May, 2025 by:

_____
**SEYFARTH SHAW LLP**
Jason J. DeJonker
Aaron Davis
233 South Wacker Drive,  Suite 8000
Chicago, IL 60606
(312) 460-5000
jdejonker@seyfarth.com
aarondavis@seyfarth.com
*Attorneys for Plaintiff*

_____
**PACHTER, GREGORY & RAFFALDINI, P.C.**
Larry H. Pachter
100 Village Green, Suite 200
Lincolnshire, Illinois  60069
(847) 317-7360
larryp@pgr-law.com
*Attorney for Borrower*

21

## EXHIBIT A

PARCEL 1:

LOT 2 IN FLINT CREEK CORPORATE VIEW SUBDIVISION, BEING A RESUBDIVISION OF PART OF LOT 41 IN CHICAGO HIGHLANDS, BEING A SUBDIVISION IN SECTIONS 25, 26,27, 34, 35 AND 36, TOWNSHIP 43 NORTH, RANGE 9 EAST OF THE THIRD PRINCIPAL MERIDIAN, IN LAKE COUNTY, ILLINOIS, ACCORDING TO THE PLAT THEREOF RECORDED AS DOCUMENT 6298070.

PARCEL 2:

CONSERVATION EASEMENT AND RIGHT, IF ANY, TO ENTER THE PROPERTY TO INSPECT AND MAINTAIN THE CONSERVATION EASEMENT PARCEL AND ENFORCE THE CONSERVATION EASEMENT AS DEFINED IN THE DECLARATION OF CONSERVATION EASEMENT, COVENANTS, CONDITIONS AND RESTRICTIONS ("DECLARATION") AS CONTAINED IN DECLARATION DATED APRIL 21, 2004 AND RECORDED JUNE 8, 2004 AS DOCUMENT 5577953.

PIN 13-35-302-028

STREET ADDRESS: 760 WEST MAIN STREET, BARRINGTON, ILLINOIS 60010

317525486v.4